IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DANA RANKIN, | ) | CASE NO. 1:13 CV 1978 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

**A.   Nature of the case and proceedings**

Before me[1] is an action by Dana Rankin under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her application for supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and procedural[6] orders, the parties have briefed

---

[1] ECF # 16. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 12.

[4] ECF # 13.

[5] ECF # 5.

[6] ECF # 15.

their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

**B.     Background facts and decision of the Administrative Law Judge ("ALJ")**

Rankin, who was 46 years old when she filed her application for benefits,[11] is a high school graduate,[12] currently not married, but with three adult sons.[13] She previously worked was as a cable puller and a hand packager,[14] but the ALJ determined that these positions did not qualify as past relevant work.[15]

The ALJ, whose decision became the final decision of the Commissioner, found that Rankin had the following severe impairments: asthma, bipolar disorder, post-traumatic stress disorder, and history of attention-deficit hyperactivity disorder.[16]

---

[7] ECF # 20 (Rankin's brief); ECF # 23 (Commissioner's brief).

[8] ECF # 23-1 (Commissioner's charts); ECF # 20-1 (Rankin's charts).

[9] ECF # 19 (Rankin's fact sheet).

[10] ECF # 25.

[11] Transcript ("Tr.") at 18.

[12] *Id.* at 426.

[13] *Id.* at 427.

[14] *Id.* at 18.

[15] *Id.*

[16] *Id.* at 12.

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Rankin's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations. She must avoid concentrated exposure to irritants, such as fumes, odors, dusts, gases, and poorly ventilated areas. She is limited to simple, routine, and repetitive tasks. She is limited to occasional changes in the work setting. She is precluded from fast-paced work environments. She is limited to occasional contact with the general public, coworkers, and supervisors. She will be off-task 5 percent of the workday.[17]

As noted, Rankin has no past relevant work.[18]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the RFC finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Rankin could perform.[19] The ALJ, therefore, found Rankin not under a disability.[20]

**C.    Issues on judicial review and decision**

Rankin asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Rankin presents the following single issue for judicial review:

---

[17] *Id.* at 15.

[18] *Id.* at 17.

[19] *Id.* at 18.

[20] *Id.* at 19.

The ALJ assigned the opinion of Rankin's treating psychiatrist, Dr. Amin, "less" weight than that of a consulting psychologist because of inconsistencies with the treatment notes. Did the ALJ properly analyze this opinion and give good reasons for the weight assigned?

For the reasons that follow, I will conclude that the ALJ's finding of no disability is not supported by substantial evidence and, therefore, must be reversed.

## Analysis

**A.     Standards of review**

*1.     Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[21]

---

[21] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[22] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[23]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## 2. *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[24]

---

[22] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[23] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[24] 20 C.F.R. § 416.927(d)(2). The companion regulation for disability insurance benefits applications is § 404.1527(d)(2). Rankin filed only an application for supplemental security income benefits.

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[25]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[26] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[27]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[28] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[29] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[30] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[31]

---

[25] *Id.*

[26] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[27] *Id.*

[28] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[29] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[30] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[31] *Id.* at 535.

In *Wilson v. Commissioner of Social Security*,[32] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[33] The court noted that the regulation expressly contains a "good reasons" requirement.[34] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[35]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[36] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[37] The former confers a substantial, procedural right on

---

[32] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[33] *Id.* at 544.

[34] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[35] *Id.* at 546.

[36] *Id.*

[37] *Id.*

the party invoking it that cannot be set aside for harmless error.[38] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[39]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[40] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[41] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[42] *Blakley v. Commissioner of Social Security*,[43] and *Hensley v. Astrue*.[44]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[45] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent

---

[38] *Id.*

[39] *Id.*

[40] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[41] *Id.* at 375-76.

[42] *Rogers*, 486 F.3d at 242.

[43] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[44] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[45] *Gayheart*, 710 F.3d at 376.

with other substantial evidence in the administrative record.[46] These factors are expressly set out in 20 C.F.R. § 416.927(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 416.927(d)(2)(i)-(ii), (3)-(6).[47] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[48]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[49] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[50] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[51] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions

---

[46] *Id.*

[47] *Id.*

[48] *Rogers*, 486 F.3d at 242.

[49] *Gayheart*, 710 F.3d at 376.

[50] *Id.*

[51] *Id.*

and the treatment reports.[52] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[53]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[54]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[55] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[56] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[57] or that objective medical evidence does not support that opinion.[58]

---

[52] *Id.*

[53] *Id.*

[54] *Id.*

[55] *Rogers*, 486 F.3d 234 at 242.

[56] *Blakley*, 581 F.3d at 406-07.

[57] *Hensley*, 573 F.3d at 266-67.

[58] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[59] The Commissioner's *post hoc* arguments on judicial review are immaterial.[60]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[61]

- the rejection or discounting of the weight of a treating source without assigning weight,[62]

---

[59] *Blakley*, 581 F.3d at 407.

[60] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

[61] *Blakley*, 581 F.3d at 407-08.

[62] *Id.* at 408.

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[63]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[64]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[65] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[66]

The Sixth Circuit in *Blakley*[67] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[68] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[69]

---

[63] *Id.*

[64] *Id.* at 409.

[65] *Hensley*, 573 F.3d at 266-67.

[66] *Friend*, 375 F. App'x at 551-52.

[67] *Blakley*, 581 F.3d 399.

[68] *Id.* at 409-10.

[69] *Id.* at 410.

In *Cole v. Astrue*,[70] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[71]

**B. Application of standards**

This is another case that turns on the ALJ's handling of the opinion of a treating source. And, once again, because the ALJ did not follow the clear analytical path set out in *Gayheart*, and also gave the opinion of a consulting examiner more weight than that given to the treating psychiatrist, my decision here must involve a scavenger hunt through the ALJ's opinion to determine if that opinion contains enough analysis of the essential *Gayheart* elements, together with good reasons for why the consulting opinion is better supported by the evidence than is the treating source opinion, to constitute, when read together, substantial evidence for the Commissioner's ultimate finding of no disability.

The importance of the finding is accentuated by the fact that the parties both agreed at oral argument that if the treating source opinion was given controlling or substantial weight, greater mental limitations would need to be imposed in the RFC, thus calling into question the ultimate finding.

---

[70] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[71] *Id.* at 940.

-13-

Rankin's treating psychiatrist was Jaina Amin, M.D.[72] The medical records show that Dr. Amin treated Rankin from October, 2010 (when Dr. Amin diagnosed Rankin with bipolar disorder, possible intermittent explosive disorder, PTSD, and found that she hears the voices of her dead parents), to April, 2012.[73] Dr. Amin issued a medical source statement on February 13, 2012, which noted that Rankin has bipolar disorder that cycles rapidly, PTSD with increased anxiety with public contact, and that she is involved with Alcoholics Anonymous for alcohol dependency.[74] In that statement, Dr. Amin concluded that Rankin has a poor ability to maintain attention and concentration, respond appropriately to changes, maintain regular attendance and punctuality, deal with the public, relate to co-workers, interact with supervisors, work in coordination or in proximity to others, deal with work stress, complete a normal workday and workweek, and relate predictably in social situations.[75]

The ALJ dealt with this opinion, and with Dr. Amin generally, in two places. First, in a discussion of Rankin's psychiatric treatment history, the ALJ found that:

1. Rankin complied with and responded well to counseling and medication;

2. Rankin reported to Dr. Amin that she was "able to stay busy" during the day with tasks like babysitting;

---

[72] *See*, ECF # 20, Attachment at 2.

[73] *Id.* at 2-3.

[74] Tr. at 421-22.

[75] *Id.*

>   3.   Rankin was able to "diffuse her anger" by "taking a walk" when faced with a potentially argumentative situation;
>
>   4.   Dr. Amin observed that Rankin responded in "an appropriate manner" when she learned of her father's death, in that she did not experience any episode of decompensation that required hospitalization or an increase in the number of counseling sessions; and
>
>   5.   Rankin received the "support" of her adoptive mother at the time of her father's death, thus "indicating fair insight and judgment."[76]

Next, in the section specifically addressing opinion evidence, the ALJ noted the following with regard to Dr. Amin:

> The undersigned gives less weight to Dr. Amin's opinion that the claimant's mental impairments have caused her "poor" sustainability issues in a customary work schedule and environment because it is not consistent with Dr. Amin's treatment notes. Specifically, Dr. Amin's treatment notes indicate that the claimant has been able to handle stressful situations, such as her father's passing, without decompensating and she is able to seek employment and perform work activity that limits her to occasional and superficial interaction with the public, coworkers, and supervisors.[77]

In the discussion of why Dr. Amin's treatment notes are inconsistent with her opinion, the ALJ cited in general to five extensive files in the record (Exhibits 4F, 5F, 8F, 10F and 11F).[78] Of these exhibits, 4F is 24 pages, 5F is 26 pages, 8F is 2 pages, 10F is 3 pages and 11F is 2 pages – for a total of 57 pages of notes.[79] Yet, from that large section of the record,

---

[76] *Id.* at 16.

[77] *Id.* at 17.

[78] *Id.*

[79] *See*, ECF # 13 at 3.

the ALJ gave only two "specific" instances of why Dr. Amin's notes are not consistent with her opinion: (1) her notes show that Rankin was able to handle "stressful situations, such as her father's passing, without decompensating;" and (2) "she is able to seek employment and perform work activity that limits her to occasional and superficial interaction with the public, coworkers and supervisors."[80]

The ALJ assigned Dr. Amin's opinion "less weight," and gave "considerable weight" to the opinion of consulting examining psychologist Graham Young, Ph.D.,[81] who issued his report in September, 2010,[82] or well before Dr. Amin issued her evaluation in February, 2012.[83] Dr. Graham gave this evaluation even before Rankin began treatment with Dr. Amin.[84]

While recent authority has sanctioned a holistic reading of an ALJ's decision to determine if the requisite *Gayheart* analysis is present in the opinion, but simply found in something other than a unified statement of reasons, there remains the requirement that an ALJ adequately set forth the reasons why a treating source is not being accorded controlling weight and do so in a way that permits meaningful judicial review. This is even more the case, such as here, where the treating source opinion is to be afforded lesser weight than that

---

[80] Tr. at 17.

[81] *Id.*

[82] *Id.* at 430-31.

[83] *Id.* at 421-22.

[84] *See*, *id.* at 306-07 (first treatment with Dr. Amin on October 6, 2010).

of a one-time examining source. As the Sixth Circuit stated above, the ALJ must give good reasons on the record why the treating source "got the short end of the stick."

Here, the need for thorough and clear statements of reasons is highlighted by the fact that the one-time examiner gave his more heavily weighted opinion a month before the treating source even saw Rankin for the first time, and many months before the treating source gave an opinion as to Rankin's mental limitations. While it is certainly possible that the examiner's opinion could still be a more supportable view of Rankin's limitations than that of the treating source, the ALJ must carefully set out the logical path by which he or she arrived at such a conclusion so as to permit the reviewing court to meaningfully adjudicate that finding. Here, such clear, specific, and thorough reasoning does not appear in the opinion, and so I am without the means to determine if the greater weight given to the one-time examiner is supported by substantial evidence.

Moreover, strictly as to the statement of reasons for giving "lesser weight" to the treating source,[85] I find that general citations to a "document dump" of over 50 pages of treatment notes provides no basis for meaningful review of exactly why Dr. Amin's opinion should not be given controlling weight.

---

[85] While there is no prescribed terminology for assigning weight in the regulations, the term "lesser weight" used here begs the question, lesser than what. The test is whether the treating source is entitled to its presumption of controlling weight, and if not, the ALJ must assign a weight, with the articulation of good reasons for that decision.

## Conclusion

For the reasons stated, I find that substantial evidence does not support the finding of the Commissioner that Rankin had no disability. Therefore, the denial of Rankin's application is reversed and the matter remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: September 18, 2014 				s/ William H. Baughman, Jr.
							United States Magistrate Judge